UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| HOLLYWOOD LIQUOR & GROCERY MART, INC., ET AL. | CIVIL ACTION NO. 20-0200 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| UNITED STATES OF AMERICA | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by the United States of America ("the Government"). See Record Document 23. Plaintiffs Hollywood Liquor & Grocery Mart, Inc., Amir Shaikh, and Beenish Shaikh (collectively "Hollywood Liquor" or "the Store") oppose the Motion. See Record Document 32. For the reasons stated below, summary judgment is **DENIED**.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

For nearly a decade, Hollywood Liquor was an authorized retailer for the Supplemental Nutrition Assistance Program (SNAP).[1] See Record Document 27 at A.R. 122. The United States Department of Agriculture (USDA) administers SNAP through its agency, the Food and Nutrition Service (FNS). See 7 C.F.R. § 271.3. SNAP benefits are provided to eligible individuals and households through Electronic Benefit Transfer (EBT) cards. See 7 U.S.C. §§ 2012(i), 2016(a). SNAP benefits may be used only for the purchase of eligible foods from authorized retailers. See 7 U.S.C. §§ 2013(a), 2016(b). Eligible foods generally include: (1) foods or food products intended for human consumption, (2) seeds and plants to grow food for personal consumption, (3) equipment

---

[1] SNAP was originally called and is perhaps better known as the Food Stamp Program. See Pub. L. No. 88-525, 78 Stat. 703 (1964).

used to hunt or fish for subsistence, and (4) meals prepared by certain authorized services. See 7 C.F.R. § 271.2. SNAP benefits may not be accepted as payment for ineligible items, which generally include non-food items, alcohol, tobacco products, "hot foods," and "hot foods prepared for immediate consumption." Id.

In 2019, the FNS opened an investigation into Hollywood Liquor after the agency's ALERT system flagged several hundred EBT transactions consistent with possible SNAP trafficking violations. See Record Document 27 at A.R. 121. "Trafficking" is defined as the "buying or selling of [food stamp benefits] … for cash or consideration other than eligible foods." 7 C.F.R. § 271.27. The investigation examined EBT transaction data at the Store from November 2018 through April 2019. See id. A site visit was also conducted on April 20, 2019. See id. at A.R. 123. It revealed Hollywood Liquor is properly classified as a convenience store, with a limited variety and quantity of eligible goods sold at low prices. See id. at A.R. 126. In addition, the Store does not have shopping carts or baskets, nor conveyer belts, bags or dividers at its checkout counters. See id; A.R. 206. Lastly, Hollywood Liquor has two cash registers and two EBT point of sale devices. See id. at A.R. 126.

On July 5, 2019, the FNS sent Hollywood Liquor a charge letter notifying the Store its investigation had found sufficient evidence of benefits trafficking and its proposed penalty would be permanent disqualification from SNAP. See id. at A.R. 147. The charge letter detailed three suspicious EBT transaction patterns informing its decision: (1) multiple transactions made from individual SNAP accounts in unusually short time frames, (2) multiple transactions made from SNAP household accounts within set time periods, and (3) exceedingly large sale amounts based on the Store's characteristics and

inventory. See id. The charge letter also included instructions on how Hollywood Liquor could demonstrate it meets the requirements for a civil monetary penalty in lieu of disqualification. See id. Hollywood Liquor filed a timely response disputing the charges and denying any wrongdoing. See id. at A.R. 176. The Store explained the high sale amounts were due to its sale of raw chicken, fish, and frozen uncooked foods by the case and by the pound, while the multiple transactions made from the same accounts were caused by customer requests to separate husbands' budgets from wives' and workday budgets from weekends. See id. at A.R. 176-77. The Store's response letter did not discuss the possibility of paying a fine to avoid disqualification, nor did it include any documentation that would permit the FNS to consider such an alternative penalty. See id.

On September 19, 2019, the FNS sent Hollywood Liquor a determination letter with its final conclusion that trafficking had occurred. See id. at A.R. 216. Additionally, the letter found permanent disqualification was the appropriate penalty because Hollywood Liquor had not provided evidence of an effective compliance policy that could have made the Store eligible for an alternative monetary penalty. See id. at A.R. 216. Hollywood Liquor appealed this determination to the Administrative Review Branch of the USDA and was invited to present evidence disputing the decision. See id. at A.R. 220; 239.

On January 7, 2020, the presiding Administrative Review Officer issued the Final Agency Decision ("FAD"). See id. at A.R. 241-51. It found evidence was lacking that the rapid, back-to-back transactions from the same individual accounts were the result of trafficking. See id. However, the FAD did conclude the repeat transactions within the same household and the large dollar value transactions were indicative of trafficking. See id. The FAD also agreed that Hollywood Liquor had failed to submit any supporting

documentation that would allow the FNS to levy a fine in lieu of disqualification. See id. In sum, the USDA agreed with the FNS that benefits trafficking had occurred and permanent disqualification was appropriate. See id. Following this decision, Hollywood Liquor filed the instant lawsuit in this Court. See Record Document 1.

## LAW AND ANALYSIS

Pursuant to 7 U.S.C. § 2023(a)(13)-(15), Hollywood Liquor seeks a trial *de novo* in this Court reviewing the validity of the administrative action. See Record Document 1. The Store asserts it did not engage in SNAP trafficking and seeks reversal of its permanent disqualification, along with attorney's fees and court costs. See id.

### I. Legal Standards

The form of *de novo* review contemplated by Section 2023 is wider in scope than the Administrative Procedure Act (APA), as the court must reexamine "the entire matter" instead of simply determining "whether the administrative findings are supported by substantial evidence." Saunders v. United States, 507 F.2d 33, 36 (6th Cir. 1974). District court review is not limited exclusively to the administrative record, as both parties "may offer any relevant evidence available to support [its] case, whether or not it has been previously submitted to the agency." Redmond v. United States, 507 F.2d 1007, 1012 (5th Cir. 1975). Although the district court is not bound by the administrative record, "the agency's decision is presumed to be valid and must stand 'unless the plaintiff proves that it should be set aside.'" Id. at 1011-12.

Section 2023 review involves two questions: (1) Did the violation occur? and (2) Is the penalty valid? See Bruno's Inc. v. United States, 624 F.2d 592, 594 (5th Cir. 1980). While review of the agency's liability determination is *de novo*, the choice of sanction may

be overturned only if it is arbitrary, capricious, or contrary to law. See Irobe v. United States Department of Agriculture, 890 F.3d 371, 377 (1st Cir. 2018). "All of the courts of appeal that have addressed the burden-of-proof issue under Section 2023 have placed the burden of proof on the party challenging the USDA's finding of liability." Id. at 378 (collecting cases) (citing Redmond, 507 F.2d at 1011-12). Ultimately, "the store bears the burden of proving by a preponderance of the evidence that its conduct was lawful." Id.

"Cases arising under the Food Stamp Act, 7 U.S.C. §§ 2011, *et seq.*, may be resolved in the district court by summary judgment." Cullen Drive-In Grocery v. Block, 778 F.2d 1141, 1142 (5th Cir. 1985). Although the aggrieved retailer must satisfy its burden to a preponderance standard at trial, its burden at the summary judgment stage remains that contemplated by Rule 56—to establish the existence of a genuine dispute of material fact. See Jerusalem Halal Meats, Inc. v. United States, 821 Fed. App'x 299, 304 (5th Cir. 2020) (Higginson, J. dissenting). As is axiomatic, a court reviewing a motion for summary judgment must view "all facts and inferences in the light most favorable to the non-moving party." Rogers v. Bromac Title Servs., LLC, 755 F.3d 347, 350 (5th Cir. 2014). But the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a 'scintilla of evidence.'" Hathaway v. Bazanay, 507 F.3d 312, 319 (5th Cir. 2007) (internal citations omitted). Where critical evidence is so weak or tenuous on an essential fact that it could not support judgment in favor of the non-movant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

## II. Analysis

The Government's Motion for Summary Judgment emphasizes the administrative evidence and reiterates the finding of trafficking. See Record Document 23-1 at 12-17. It argues no reasonable factfinder could conclude that trafficking did not occur at Hollywood Liquor, and hence, the decision was valid. See id. at 17. The Government also asserts permanent disqualification was the appropriate penalty because a civil monetary penalty was not available due to Hollywood Liquor's failure to demonstrate an effective compliance policy. See id. at 18. Hollywood Liquor's opposition memorandum discusses numerous admissibility issues with the administrative evidence before providing explanations for the abnormal EBT patterns, which it believes creates factual issues to be resolved at trial. See Record Document 32-1.

### A. Admissibility Concerns

Hollywood Liquor takes issue with several forms of evidence that served as the basis for the USDA's decision, arguing the *de novo* review required at the district court level in place of an APA-style review of the administrative record mandates all evidence comply with the Federal Rules of Evidence. See id. at 4. Consequently, the Store challenges (1) the ALERT scans under Rules 901(b)(9), 701, and 702; (2) the store visit report and unverified photographs under Rules 802 and 1007; and (3) the sanction recommendation of the SNAP specialist under Rule 602. See id. at 5-9. The Government counters these arguments by pointing to the statute itself and related administrative guidance that explicitly permits reliance on evidence established through on-site investigations, inconsistent redemption data, and EBT transaction reports. See Record Document 36; 7 U.S.C. § 2021(a)(2); 7 C.F.R. § 278.6(a).

Hollywood Liquor's argument is foreclosed by the Fifth Circuit's decision in Redmond. See 507 F.2d at 1011. In comparing the APA and the Food Stamp Program's standards of review, the Fifth Circuit held "Congress intended nothing more than that the district court would not be bound by the administrative record." Id. Like the plaintiff in Redmond, Hollywood Liquor would have this Court proceed as if no agency action had been taken. See id. This directly conflicts with the statutory mandate for a district court to "determine the validity of the questioned administrative action in issue." § 2023(a)(15). It would stand reason on its head to task a reviewing court with affirming or reversing an agency's determination, while also instructing the court that it could not consider the type of evidence that same agency was statutorily instructed to use in reaching its ultimate conclusion. Numerous courts within this Circuit and beyond agree that EBT data, on-site investigations, and any related reports may be considered on *de novo* review. See e.g., Maredia v. United States, 2016 WL 7736585 at *4 (S.D. Tex. Aug. 16, 2016) (rejecting store's admissibility argument for ALERT data); PT Nguyen, Inc. v. United States, 2019 WL 4601845 at *10 (M.D. La. Sept. 23, 2019) ("It is well-established that it is sufficient for the United States to rely solely on EBT data"); Yong Choi, Inc. v. United States, 639 F. Supp.2d 1169, 1179 (D. Haw. May 28, 2009) ("The law is clear that FNS may base its finding of a violation on analysis of EBT transaction reports or on-site surveys"). Accordingly, the Court rejects any admissibility objections under the Federal Rules of Evidence to the ALERT scans, on-site investigation report and photographs, and the SNAP specialist's sanction recommendation.

## B. Procedural Challenges

In addition to its objections rooted in the Federal Rules of Evidence, Hollywood Liquor attacks three other aspects of the administrative procedures used below. First, the Store argues correlation between the ALERT scans and the act of trafficking was not established, thus creating a foundational issue for the entire case against Hollywood Liquor. See Record Document 32-1 at 7. The Court disagrees. The suspicious patterns revealed via the ALERT scans triggered a full-scale investigation of Hollywood Liquor. Only after an on-site visit and examination of EBT data did the FNS reach its conclusion that trafficking took place and send its charge letter to Hollywood Liquor. While the ALERT scans alone may not have been sufficiently indicative of trafficking, significant evidence was compiled through statutorily recognized means after red flags were raised to support the eventual decision.

Second, Hollywood Liquor believes the burden of proof was improperly shifted during the USDA's review of its agency's determination.[2] See id. at 8. The Store argues that, similar to other areas of administrative law and the APA, the burden remains with the agency as it works its way up the organizational chain. See Record Document 32-1 at 8. The Government argues the matter was technically appealed to the Administrative Review Branch and therefore any burden should be on the appellant challenging the initial finding made by the FNS. See Record Document 36 at 4. While Section 2021(a)(2) establishes the initial burden is on the FNS to prove a violation occurred, and Section 2023 places the final burden of proof on the Store to convince the federal district court that the agency decision was invalid to a preponderance standard, the statute is silent as

---

[2] The FAD states, "[Hollywood Liquor] has not convincingly rebutted the ROD's determination that Appellant most likely trafficked in SNAP benefits." Record Document 27-2 at A.R. 250.

to whom the burden rests with for the in-between stage of review by the USDA's Administrative Review Branch. As discussed by Hollywood Liquor, it appears no federal court has yet addressed this precise issue. See Record Document 32-1 at 8.

The Court does not believe it is necessary to become the first to do so, given the standard of review it must employ. As previously discussed, the Court is tasked with conducting a trial *de novo* in which it must reexamine the entire matter and cannot rely exclusively on the administrative record. The Court is required to make its own findings of fact and conclusions of law, before ultimately reaching the overarching question of whether the agency's decision was valid. Accordingly, the Court can and will evaluate the evidence independently and reach its own conclusion as to whether trafficking occurred and disqualification was appropriate. If the Court's independent findings coincide with those reached below, irrespective of any improper burden shifting at that level, the agency's decision will stand.

Third and finally, Hollywood Liquor argues the FNS deviated from its standard operating procedures by not utilizing comparison stores to examine the prevalence of the suspicious EBT patterns in the geographic area. See Record Document 32-1 at 9. The Government contends Hollywood Liquor points to the incorrect operating procedure, given that the Investigative Analysis Branch conducted the report in this case rather than the Case Screening Branch. See Record Document 36 at 4. Regardless of which operating procedure controls, the Court is satisfied a comparison analysis did take place and helped inform the administrative decision. See Record Document 27 at A.R. 131-33. The administrative record clearly indicates the Program Specialist surveyed each of the nearby SNAP-participating stores, including similarly situated convenience stores and

more extensive supermarkets, compiling average transaction amounts and average transaction numbers per store before comparing this data to Hollywood Liquor. See id.

Although Hollywood Liquor's grievances pertaining to how the final decision was reached are worthy of consideration, the *de novo* review the Court must undertake serves as an important safeguard by examining all the relevant evidence and reaching its own independent conclusion. Having analyzed the preliminary arguments raised by Hollywood Liquor, the Court next turns to the merits of the administrative decision.

### C. Summary Judgment Evidence

Because the Court's job is to determine the validity of the USDA's final decision, it will not examine the charge relating to multiple transactions from individual accounts in unusually short time frames, given the FAD found insufficient evidence to support that these rapid transactions were the result of trafficking. See Record Document 27-2 at A.R. 246. However, the remaining two flagged transaction patterns—multiple transactions within the same households and excessively large transactions—are subject to review.

The Government's evidence supporting trafficking is largely found within the administrative record. It relies heavily on EBT transaction data revealing irregularities that it believes cannot be explained by anything other than trafficking.[3] See Record Document 23-1. In terms of intra-household abnormalities, the Government points to seventy-two (72) sets of multiple purchases made by the same household account within a set timeframe. See Record Document 27 at A.R. 128-29, 166, 206. For example, one household made four separate transactions for a total of $258.58 in under four hours. See

---

[3] While entirely circumstantial in nature, the Court recognizes "smoking gun" evidence in SNAP trafficking cases is difficult to come by. See Irobe, 890 F.3d at 380 ("To be sure, all of this evidence is circumstantial, but the cumulative effect is powerful. Irregular patterns may emerge in virtually any retail operation, but a drumbeat of irregularities can be highly probative of unlawful conduct").

id. at A.R. 161. With regards to the atypically large purchases, the Government points to three hundred and sixty-eight (368) transactions that appear outlandish in total amount for a convenience store. See id. at A.R. 208. While the average transaction total at a convenience store in Caddo Parish is $7.61, the average transaction at Hollywood Liquor during the observation period was $11.42. See id. at A.R. 248. Within the over three hundred flagged transactions, the FNS also noted unusual groupings of prices. See id. at A.R. 248. For example, eight of these transactions were for exactly $59.85. See id. The Government also emphasizes unusual consumer behavior at the Store, with some customers shopping at Hollywood Liquor and nearby supermarkets on the same day and spending more at the convenience store. See id. at A.R. 133-46.

Hollywood Liquor counters mainly with explanations for the irregular patterns and a sworn affidavit from Amir Shaikh, the Store's owner, wholly denying trafficking took place. See Record Document 32. The Store argues flaws in the FNS investigation led to its erroneous finding of trafficking, as the agency failed to appropriately compare it to other convenience stores with similar Cajun-inspired offerings; did not consider the Store's close walking proximity to a SNAP-heavy neighborhood, which has resulted in increased EBT transactions over competitors; and did not factor in the Store's popular "you buy, we fry" program.[4] See Record Document 32-1 at 12. Hollywood Liquor also draws attention to the January 2019 government shutdown—in the middle of the observation period—during which eligible individuals and households received two months of EBT funds instead of their usual monthly allotments. See id. at 18. Shaikh's affidavit details important characteristics of his business, including the propensity to take

---

[4] This program essentially provides a loophole for hot foods to become EBT-eligible, as products are purchased raw or frozen before being cooked in-store. See Record Document 32-6 at 2.

telephone or verbal orders for large items instead of scanning them directly at the checkout counter. See Record Document 32-6. The affidavit also discusses co-shopping and balance splitting amongst spouses and lists the prices for Hollywood Liquor's bulk sales of chicken, ranging from less than $20 to $159.99 for a box of white meat. See id.

The Government counters many of Hollywood Liquor's arguments with additional evidence. When asked for the most expensive items the Store sold during the in-store visit, Hollywood Liquor employees failed to inform the FNS investigator of their frozen and raw products for sale by the box and pound. See Record Document 23-1 at 15. The Government also highlights the administrative record's finding that the invoices of these bulk items provided by Hollywood Liquor do not add up to a profit, even when given liberal mark-ups by the agency. See Record Document 27 at A.R. 213. Finally, after the store visit, the ALERT system has seen a sixty percent drop in flagged transactions at Hollywood Liquor. See id. at A.R. 212. The Government argues that if lawful customer behavior were to explain the alarming patterns previously observed, such a dramatic decrease would not have occurred. See Record Document 23-1 at 17.

Despite the Government's ample circumstantial evidence in support of the agency's trafficking decision, the Court finds Hollywood Liquor has produced enough evidence to defeat summary judgment. In its most recent foray into SNAP trafficking, the Fifth Circuit suggested an outright denial in an affidavit from the store owner could prove pivotal in defeating summary judgment. See Jerusalem Halal, 821 Fed. App'x at 302 (holding the absence of a definitive denial permitted summary judgment to be affirmed); see also McGlory v. United States, 763 F.2d 309, 311 (7th Cir. 1985) (holding that where there was a "flat denial" of the agency's findings, "the court was required to resolve the

conflict in the version of events" by holding a hearing and making factual findings). While undoubtedly self-serving, Shaikh's affidavit denial provides more than merely "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "only a 'scintilla' of evidence." See Jerusalem Halal, 821 Fed. App'x at 305 (Higginson, J. dissenting) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1076 (5th Cir. 1994)). Rather, Shaikh has offered plausible explanations for the appearance of trafficking and pointed to practices at Hollywood Liquor that the FNS did not account for in its investigation. See Record Document 32-6.

Of particular significance to the Court is the agency's failure to factor in the Store's "you buy, we fry" program.[5] If as popular and pricy as Sheikh attests, this program could potentially explain suspicious household patterns and large transaction amounts at Hollywood Liquor. Very recently, a sister district court analyzing this same program found the USDA's failure to account for "you buy, we fry" precluded summary judgment. See Euclid Market v. United States, 2020 WL 6262123 at *3 (E.D. Mo. Oct. 23, 2020). The Court believes a similar result is warranted here.

### D. Permanent Disqualification Penalty

Section 2021 provides limited circumstances where a SNAP retailer found to be trafficking in benefits may be assessed a civil penalty in lieu of disqualification. See 7 U.S.C. § 2021(b)(3)(B). Such an alternative sanction is discretionary and is only available "if the firm timely submits to FNS substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent

---

[5] The Court recognizes the FNS likely did not consider this program because Hollywood Liquor employees curiously did not inform the on-site investigator of it in April 2019. However suspicious this omission may be, the Court cannot make such an adverse inference at this stage, and "you buy, we fry" could plausibly explain abnormalities at Hollywood Liquor.

violations of the Program." 7 C.F.R. § 278.6(i). At a minimum, the retailer must fulfill four criteria to be considered for the discretionary fine. See id. The retailer must (1) have developed an effective compliance policy; (2) establish that both its compliance policy and program were in operation at the location where the violations occurred prior to the occurrence of violations cited in the charge letter; (3) have developed and instituted an effective personnel training program; and (4) demonstrate either (a) its ownership was unaware of, did not approve of, did not benefit from, or was not involved in the conduct or approval of trafficking, or (b) the violation was the first occasion in which a member of store management was aware of, approved of, benefitted from, or was involved in any trafficking. See id.

Despite receiving guidance on how to demonstrate eligibility for a monetary penalty in the FNS charge letter, Hollywood Liquor did not request this alternative sanction nor provide any documentation that would have allowed the FNS to consider it. See Record Document 27 at A.R. 250. Further, Hollywood Liquor has not addressed this issue in its briefing on the instant motion, notwithstanding the Government's inclusion of a full civil monetary penalty analysis in its filings. See Record Documents 23-1 & 32-1. Accordingly, the penalty issue will not be considered at the bench trial set in this matter.

## CONCLUSION

At the summary judgment stage, Hollywood Liquor must only demonstrate genuine disputes of material fact remain regarding the validity of the agency's final decision. This burden has been satisfied, and a trial is necessary to determine whether the agency's finding that unlawful SNAP benefits trafficking took place at Hollywood Liquor was valid. Because Hollywood Liquor failed to address its eligibility for an alternative sanction to

permanent disqualification at the agency level and before this Court, the ensuing trial will center on whether Hollywood Liquor can prove to a preponderance standard that a violation did not occur and will not address whether permanent disqualification was arbitrary, capricious, or contrary to law.

For the reasons assigned herein, the Government's Motion for Summary Judgment (Record Document 23) is hereby **DENIED**. An order memorializing this decision shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 7th day of July, 2021.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT